We'll turn to USA v. Oli. Good afternoon, your honors. May it please the court. My name is Wes Earhart, and I'm here on behalf of the petitioners. In this case, movements appellants Patricia Dalton Oli and the other entities that were affected by the forfeiture and the underlying criminal matter. I believe the issues here are clear. It's whether there was a fraud perpetrated on the court and whether the district court abused its discretion in denying the motion to set aside the forfeiture from which we have appealed. At the outset, however, the government has raised a jurisdictional argument that I'd like to address briefly, in that they claim that the notice of appeal was untimely. That's not the case, your honors. Rule 4 of the Federal Rules of Appellate Procedure allows 60 days from the date of the final judgment where the United States is a party to file the notice of appeal. The final judgment in this case was entered by the clerk on December 30, 2015, and the notice of appeal was filed within 60 days thereafter. Additionally, Rule 58 That depends on what the final judgment was. Was the final judgment Judge Rakoff's statement, or was it his opinion? Yes, your honor. That is a good question. Thank you. The separate document requirement of Rule 58 does contemplate that there has to be a final judgment or a separate document setting forth that that is the judgment in the case. Now, that being said, the That's different from a situation where there is a judgment and the only thing that has not happened is the writing of an opinion. You know, we sometimes, for any number of reasons, will make an order, make the judgment, the opinion to follow. Isn't that what happened here? That's correct, your honor. However, this court has consistently held, as was the case in Kanematsu-Goshu, that where there is confusion on this point, the latter judgment should rule unless the prior judgment actually calls itself, distinguishes itself as a judgment. In this case If there's confusion or ambiguity, right? Yes, your honor. In the second document. But if there's no ambiguity or confusion raised by the second document, what's the problem? Well, your honor, I think there is ambiguity and confusion raised by the second document because, as was the case in Kanematsu-Goshu, it also instructed the clerk to close the record, close the motion. And that was a serious consideration that the court made in reaching its opinion there. How was the first one designated? Your honor? How was the first document designated? It was designated just as an order. Not as a judgment? Not as a judgment, no, your honor, to be clear. So if we apply Kanematsu-Goshu, then the second judgment would be the final judgment. Did it say opinion to follow? The first judgment said opinion to follow. It didn't say that it did not characterize itself as a judgment, and it did say opinion to follow. No, your honor, it did not characterize itself as a judgment, and it did say opinion to follow. Additionally, I would call attention to the case that the government relies upon heavily in claiming that this is untimely, the Cumberland Fire case. And I would just tell the court that that case is not binding on this circuit, as it is, I believe, a third circuit case, and also expressly states that it is not precedential at the outset of the case. So moving into the issues at hand, there was a fraud perpetrated on the court in terms of the fact that the prosecution lied to the court when it said that it had met its Brady requirements pretrial. There was an IRS investigation that had been conducted outside of the influence of the prosecutors with respect to who the fees belonged to in the Homer transactions involving Jenkins & Gilchrist and Bank One. Jenkins & Gilchrist, you know, having said those were Jenkins & Gilchrist fees, Bank One having said those were Bank One's fees, the IRS concluding same and assessing penalties as such. Those files in their entirety were concealed and remain concealed today. In addition, when that issue was raised on the motion for new trial, the government created a straw man argument and in essence acted as though volumes of files that would encompass an IRS investigation were a handful of files that were essentially just a few forms 1099. Additionally, they've done the exact same thing in front of this court in their brief today and attempt to mislead the court into believing the government failed to produce only a handful of forms 1099, which is most certainly not the case. That being said, we would submit that the district court abused its discretion in failing to recognize that the prosecution admitted during the proceedings in the motion to set aside during the hearing that it had not turned over the IRS files, that it had not turned over the J&G audit file, which would have been part of the IRS files. At no time were those files turned over. Additionally, the judge in the district court made the determination that the onus was on the trial defense counsel to locate those documents in the documents that were turned over. Those documents were not a part of the documents that were turned over, but additionally, I would call this court's opinion to U.S. v. COPPA, which placed a heavy responsibility on the prosecutors and likewise held that regardless of whether the trial counsel requests the information or not is irrelevant. Additionally, just to point out, Hazel Atlas does allow this court the discretion to reverse the district court's denial of motion to set aside, and that's what we are seeking here today, that we would ask that the district court reverse the decision of the . . . We would ask that this court . . . I'm sorry, Your Honors . . . to the petitioners, or in the alternative, that the case be remanded for an evidentiary hearing, which the government has opposed at every turn. There had been an evidentiary hearing requested, and it was opposed. So, that's the relief that we're seeking here today. Thank you, Mr. Earhart. You've reserved two minutes. Yes. Thank you, Your Honors. Mr. Okula. Thank you, Judge Cabranes. May it please the Court, good afternoon. I'd like to touch very briefly on the timeliness issue, picking up on the questions posed by Judge Calabresi and Judge LaValle. There were two categories of cases covered by Rule 4, one that requires a separate document where there is a judgment involved, and the other category is where there is simply an order entered on the docket sheet. This case is not a separate document case, so Kanematsu is irrelevant to this case. And the simple reason is, and it deals with a little of the uneasiness of fitting the civil appellate rules into a criminal case, is that there is no judgment in this case except the judgment against the defendant at the end of the case. So, when you have claimants here whose claims to forfeited property are rejected, the appealable instance, if you will, is an order entered by the district court. There is no judgment. So, when the order was entered on the docket on October 20th of 2015, that became the operative… You say that's the final order. Yes. The opinion spoke to the criminal case with respect to the other parties. No, Judge Calabresi. What happened here is that the hearing that led to the ruling was held in mid-August of 2015. And the claimants asked for an expedited ruling at that hearing where they said the property, including a piece of real property that was a subject of forfeiture, is going to be sold in two weeks unless we get a ruling from you, Judge Rakoff. That's what they said. So, when Judge Rakoff, after hearing argument, I think on August 18th, he said, I will give you in answer a ruling next week. I may not be able to give you my rationale, but I will enter an order ruling on your motion next week. And that's what Judge Rakoff did. Five or six days later, on August 20th, he entered an order that clearly and unequivocally said the motion to set aside the forfeiture is denied. And it said opinion to follow. And based on, this court has not ruled directly on the operative effect of a court entering an order like Judge Rakoff and mentioning that an opinion will follow later. But the Third Circuit's opinion in Cumberland is exactly on all fours with our case. Yes, Judge Calabresi. There's something else that we haven't decided, and that is whether a situation like this, where a third party, in effect, asks to intervene in a forfeiture, if that is civil or criminal. And that several circuits have said it is civil, and therefore subject to the civil thing. But I don't believe we have any holdings on that. That is correct. We noted in a footnote in our brief that I think the Ninth Circuit and I believe the Third Circuit have ruled that the civil rules for the timeliness of an appeal, that is 60 days when the government is a party, are applicable to a criminal forfeiture when it's somebody other than the defendant who's challenging the forfeiture. But if you want to use the criminal rules, we'd be all for that, Judge Calabresi, because that would mean that it's a 30-day time limit or even shorter. Either way, you say that if we were to go, if we go, and of course if there is no jurisdiction, we must go. If we were to go on a no-jurisdiction ground, we would have to decide this question of whether the order is the final one, the first one, and we would have to decide whether this is civil or criminal so that we know what the timing is. That is correct. But if it's a civil one, then the claimants here are out of time, because there's no dispute that they filed it pursuant to the civil rules and the 60-day clock rather than the shorter one for the criminal rules. And that's jurisdictional. Right. Turning to the merits, a review of the record makes it clear that Judge Rakoff thoughtfully and conscientiously reviewed all of the claims that the claimants are raising here that they claim constituted the fraud on the court. The principal argument that they are advancing in connection with the current appeal is that they were denied access to the IRS's separate civil promoter penalty examination that was focused on Jenkins and Gilchrist and Bank One. But a review of the record makes plain that Judge Rakoff considered the claimant's application to get access to those documents. And more specifically, during the course of the habeas proceeding, the claimants made a motion, a discovery motion, to Judge Rakoff and said, allow us to subpoena the IRS because we want to get the IRS's promoter penalty records. Judge Rakoff denied that application. They renewed that and asked for reconsideration, and Judge Rakoff denied it again. And that ruling was eminently correct, because Judge Rakoff reasoned that the sole reason that was animating the request to get those IRS documents is that the claimants wanted to establish that it was Jenkins and Gilchrist rather than Bank One that had paid the referral fees that were the bogus, phony referral fees that ended up in John Oley's pocket that constituted the fraud on Bank One. But as Judge Rakoff found in denying the discovery motion, he said the issue of whether Jenkins and Gilchrist made these payments and therefore issued 1099s to the people to whom they were made, or Bank One did it, is irrelevant to the central issue that was disputed in the case. That is, did those payments diminish Bank One's fee, or did it diminish Jenkins and Gilchrist's fees? If you look at the thorough and comprehensive treatment that Judge Rakoff gave to this in the habeas ruling, which he essentially incorporated into his 60B ruling, you'll see that Judge Rakoff said the government embraced the theory at trial that Jenkins and Gilchrist made these payments. So there was no need for them to get these documents that showed that it was Jenkins and Gilchrist that made the payments, because our indictment alleged it, our witnesses testified to it, and we accepted that theory that it was Jenkins and Gilchrist that made the payments. The whole issue at trial was whether John Oley falsified the underlying documents that gave rise to how much Bank One received. And this was demonstrated, I think, most succinctly and vividly in the rebuttal summation chart that we used, which is at appendix page 122. You'll see that in situations where John Oley did not insert one of his co-conspirators into the transaction, Bank One received a 1.8% fee, which is what the testimony said that they would be entitled to. But when Oley, on situations where he had his co-conspirators, submit fraudulent invoices to Jenkins and Gilchrist, it diminished Bank One's fees. And that was the theory of our prosecution, and it was backed up by the Bank records, it was backed up by the Bank One records and the witnesses who testified, and it was backed up by the testimony from John Oley's, one of the personnel in his Innovative Strategies group, who testified how the payment of these referral fees diminished Bank One's fees. So for all those reasons, given Judge Rakoff's thoughtful consideration of all these issues, we'll rest on the record below and urge this Court to affirm Judge Rakoff's ruling. Thank you very much. Mr. Earhart, you've reserved some time. Thank you, Your Honor. I don't want to take up any more of the judge's time than is necessary, so just a few brief points. Speaking to what Mr. Okula raised, I can't help but notice that the Court has some issues with the timeliness issue and whether that should be applied here to the first or the second. I would just like to point out that in the Supreme Court case that dealt with this initially, it stated that Rule 58 should be interpreted to prevent the loss of a right to appeal, not to facilitate the loss of a right to appeal. And if this Court were to rule in favor of the government on this issue, it would be doing the latter. Second, as with the IRS civil tax shelter promoter audits, they claim that the parties had to seek the right to subpoena those documents, that they were denied, that they tried to have an evidentiary hearing, that they were denied. I think if we go back to this Court's case, U.S. v. COPPA, the prosecutors bear that heavy burden. And U.S. v. COPPA, which I believe was your case, Judge Cabranes, it cites to U.S. v. Kiles, which was a case in which there were suppressed statements of eyewitnesses. And there the Supreme Court held that the government, quote, the government should actively seek Brady material in its files and files of related agencies, reasonably expected to be in possession of such information. And there's a parallel investigation going on here between the civil and the criminal. Those files should have been sought and should have been turned over and should have had the opportunity to reach the jury so that a thoughtful conclusion could have been made. Thanks, Mr. Herrod, very much. Thank you, Your Honors. We reserve the decision. Thank you.